Exhibit Q

**University at Buffalo**
**Clinical Legal Education**
School of Law

November 8, 2018

VIA UPS OVERNIGHT MAIL

Freedom of Information Act Request
Phillip Hatcher
Disclosure Manager
Internal Revenue Service
400 West Bay Street
M/S 4030
Jacksonville, FL 32202

    **RE:**     **FOIA Request Re: use of computer hacking tools for investigations**
                    **Request No. F18257-0012**

Dear Mr. Hatcher:

    We write on behalf of co-requestors Privacy International ("PI"), the American Civil Liberties Union, and the American Civil Liberties Union Foundation (together, the "ACLU"), and the Civil Liberties and Transparency Clinic of the University at Buffalo School of Law ("CLTC"), to respond to your agency's October 4, 2018, response letter to our September 10, 2018, Freedom of Information Act ("FOIA") request (the "Request").

    By letter dated September 10, 2018, PI, ACLU, and CLTC requested from the Internal Revenue Service ("IRS") copies of records related to the IRS's use of computer hacking tools to conduct law enforcement investigations. The Request (attached hereto as Exhibit A) sought five specific categories of records, some of which included even more specific sub-categories. It asked for expedited processing under 5 U.S.C. § 552(a)(6)(E), and sought a limitation of fees and public interest fee waiver.

    As of today, we have received one letter in response to our Request to the IRS. That letter, dated October 4, 2018 and signed by you, acknowledged receipt of our Request and purported to be a "final response" (attached as Exhibit B). The letter, however, did not provide any documents responsive to our request, nor did it cite any FOIA exemptions as a basis for refusing to disclose records.[1] Instead, the letter stated that the Request did not meet the requirements of FOIA and Treasury regulations because it did not "describe the documents [requested] in sufficient detail." *See* Ex. B, at 2. Specifically, the letter denied item 1 of our Request for failing to provide a contract number and items 2-5 on the basis they were not "reasonably described." *See id.* The letter asked us to "consider revising [our] request" to remedy this alleged deficiency. We have attempted multiple times to call

---

[1] This letter is timely filed within 35 days of receipt of Mr. Hatcher's final response letter stating our request was not specific enough. We received that letter on October 4, 2018.

507 O'Brian Hall, Buffalo, NY 14260-1100
716.645.6222  (F) 716.645.2167
jmmanes@buffalo.edu

www.buffalo.edu

Disclosure Tax Law Specialist Bernard McDade, who was listed in the IRS letter as a point of contact, but we were unable to reach him.

We disagree with the agency's determinations denying the Request. At this time, we do not intend to revise the substance our Request, except to add a specific date range, described below. The Request, as written, does in fact properly describe the records we seek, in compliance with the FOIA statute, governing case law, and the cited IRS guidelines. The Request specifically identifies the categories of records we seek with reference to the types of documents, their function, and their subject matter. Any person reasonably familiar with the subject matter of the request—the use of computer hacking techniques by the IRS for purposes law enforcement—would be able readily to identify the responsive records. Indeed, the identical request submitted to the IRS was submitted to six other agencies. None of those agencies have refused to process the Request and none have suggested that it lacks a reasonable description of the records sought.

To the extent that the Request neglected to include a date range, we are glad to limit the request to documents for a reasonable period. We would like to receive documents going back 10 years—*i.e.* from September 8, 2008 until the request is filled—but are willing to discuss shorter ranges if that would significantly ease the burden on the agency or speed its response.

As argued in detail below, the IRS cannot in this instance avoid its obligation under FOIA, governing case law, and its own regulations to conduct a search for responsive records and to disclose all such materials that do not fall squarely within an exemption. We ask the IRS immediately to process the Request as written, subject to the date range specified above.[2]

A. PI, ACLU and CLTC followed FOIA and IRS guidelines by reasonably describing the records sought.

PI, ACLU, and CLTC are entitled to a substantive response from the IRS because we have satisfied both the FOIA and the IRS requirements to describe the records we seek. According to the Freedom of Information Act, agencies of the government must make records "promptly available" upon any request for records which "(1) reasonably describe the records sought and (2) [is] made in accordance with published agency rules." 5 U.S.C. § 552(3)(a).

Under settled FOIA case law, the requirement to "reasonably describe" records is satisfied "if a professional employee of the agency familiar with the subject matter can locate the records with a reasonable amount of effort." *Seife v. United States Dep't of State*, 298 F. Supp. 3d 592, 611 (S.D.N.Y. 2018); *see also, e.g.*, *Goland v. CIA*, 607 F.2d 339 (D.C. Cir. 1978).

---

[2] We note that the October 4 letter did not indicate that it was subject to appeal, even though it was styled as a "final decision." Under FOIA, if a determination is subject to appeal, the agency must say so explicitly. 5 U.S.C. § 552(a)(6)(A)(i)(III)(aa). We have therefore not directed this letter at the FOIA appellate authority.

2

Treasury regulations, which govern IRS's FOIA operations, are not to the contrary. Those regulations provide that the IRS must "make reasonably described records available to a person making a request for such records." 26 C.F.R. § 601.702(c). If the IRS determines that a request does not meet this standard, they "shall promptly advise the requester in what respect the request...is deficient so that it may be resubmitted or amended for consideration." *Id.* Importantly, the Treasury regulations state that the "reasonable description requirement shall not be used by officers or employees of the Internal Revenue as a device for improperly withholding records from the public." 26 C.F.R. § 601.702(c)(5)(i).

Treasury regulations further provide that "no specific formula for a reasonable description of a record can be established." 26 C.F.R. § 601.702 (c)(5)(i). The regulations list a number of factors that can be used to determine if the reasonableness is satisfied generally, including the name, subject matter, and location of records sought. *See id.* However, these are not inclusive factors and failure to include any one of them does not automatically mean the request has failed to reasonably describe the records sought. A request can have a reasonable description without including any of the factors listed in the Treasury regulations, since there is no specific formula.

The IRS has improperly rejected our Request under these standards. For item 1, the IRS has stated as the basis for its refusal to process that the Request does not include specific contract numbers sought. *See* Ex. B. For items 2 through 5, the IRS has not specified why the requests do not meet the standards outlined above, other than to assert the possibility that a search for such records might be "burdensome." *See* Ex. B.

This response is unwarranted and unlawful. Our Request describes in detail the subject matter and types of material we seek. *See* Ex. A. In our Request, we have asked for specific types of documents relating to specific subject matter and which serve particular functions. We have now also agreed to a specific date range. A person familiar with the IRS's use of computer hacking tools would have no trouble identifying what records are responsive. Among other things, the request contains a detailed, specific definition of "hacking techniques" and related terms, which was designed to make it as clear as possible what activities the request is focused on. *See* Ex. A, at 9. Each item of the Request then specifies particular types of records sought that relate to hacking techniques, so defined.

The first item of the Request breaks out five specific categories of responsive records: purchase orders and similar documents with vendors of hacking tools; policies, guidelines, legal opinions and/or rules that govern hacking techniques; non-disclosure agreements relating to hacking techniques; training materials, including materials from conferences, courses, and workshops; and marketing and promotional materials regarding hacking techniques. Each of these subcategories of item 1 defines a discrete set of records that the IRS can readily identify.

Items 2 through 5 of the Request are similarly specific. For example, item 2 details that it is seeks records that constitute "audits, assessments, or statistical reports" that relate to hacking techniques. Item 3 seeks "[r]ecords reflecting internal approvals or

3

authorizations" to use hacking techniques as well as "standard forms, templates, checklists or similar documents that are used as part of any internal process(es) for obtaining approval to use hacking techniques." Item 4 focuses on "[l]icenses, waivers, or agreements" with other governmental entities that concern hacking techniques. And item 5 seeks communications with other law enforcement agencies that contain two discrete search terms "computer network exploitation" or "network investigative technique."

We crafted this Request in such a way as to assist the agency to identify the set of documents responsive to each item. *See* Ex. A. Further, it is impossible for us to draw the Request more specifically, at least without more intimate knowledge of the kinds of files that the IRS in fact keeps about hacking, and the organization of those files. We would be more than happy to work with agency officials to further specify and refine particular aspects of the Request in light of the manner in which the IRS actually maintains its records. But at this stage we lack sufficient information to be able to meaningfully narrow the request in ways that would assist the agency (except to provide a date range).

The reasons that the IRS's October 4 letter provides for refusing to process the Request do not withstand scrutiny and likely violate the Treasury regulations' requirement to "advise the requester *in what respect* the request . . . is deficient." 26 C.F.R. § 601.702(c) (emphasis added). With respect to items 2-5 of the Request and most of item 1, the IRS offered no explanation at all as to how or why the IRS regarded the Request as not reasonably described or unreasonably burdensome. It is therefore difficult or impossible to know how we could revise or narrow the Request in order to satisfy the agency.

Furthermore, with respect to item 1 of our Request, the IRS has provided a plainly inapplicable justification for refusing to process. The letter states that the request is improper because it does not contain a valid IRS and/or Treasury contract number. This objection misconstrues our request and flatly ignores much of item 1. Only subsection (a) of item 1 involves IRS contracts with other agencies or entities. There are four other subsections that have nothing to do with contracts.

Moreover, the purported requirement to include specific contract numbers cannot reasonably be applied to our Request because the purpose of our request is to determine, in the first place, whether the IRS has contracted with providers of hacking technology. Based on publicly available information, we have not been able to determine whether these contracts exist, let alone identify contract numbers. As such, it is impossible for us to specify the particular contract numbers that might be responsive. Instead, to the extent that item 1 seeks contracts, it has specified which contracts are responsive by reference to the detailed definition of "hacking techniques" and "equipment, software and/or technology that implements or facilitates hacking techniques" included in the request. (If, however, the IRS has actually published information about contracts numbers that would allow us to identify the specific ones relevant to our request, we would be glad to learn where we can find such information in order to make the request more precise.)

Moreover, the provision of the IRS Manual that the letter cites, § 11.3.13.9.2.1, is focused primarily on providing contractors an opportunity to object to the release of contract

records. IRS can provide its contractors such an opportunity without specific contract numbers being listed in the Request. Moreover, even if the Request is "imperfect" under the terms of the IRS Manual for lacking a specific contract number the IRS has no legal authority to ignore the rest of item 1, which asks for far more information than just contracts, including: purchase orders, lease agreements, invoices, policies, guidelines, legal opinions, deployment or training materials, and marketing and informational materials. *See* Ex. A.[3]

As demonstrated above, our Request reasonably describes the records we are seeking. Under the applicable provisions of FOIA, governing case law, and the Treasury regulations, we are entitled to a proper response from the IRS. We thus respectfully request that the IRS reevaluate our original Request and begin processing it as soon as possible. To the extent that the IRS has specified particular concerns about the scope of its response to certain aspects of the request, we stand ready to discuss those with agency officials.

### B. The IRS cannot use the unreasonable burden standard to deny review of a reasonably described FOIA request.

PI, ACLU, and CLTC are entitled to a proper response from the IRS since the Request does not place an unreasonable burden on the IRS. IRS regulations provide that requests should describe documents in sufficient detail so that records can be located "without placing an unreasonable burden upon the IRS." Treas. Reg. § 601.702(c)(5)(i).

The IRS's October 4 letter suggests that the Request may impose such a burden but it offers no explanation as to how or why it would do so, nor how it could be revised or narrowed in order to avoid such a burden. An agency cannot simply refuse to review a FOIA request under the "unreasonable burden" standard without explaining the burdens it will face. By contrast, in some cases courts have found that broad requests that seek "all records" or "every file" on an expansive subject matter can constitute an unreasonable burden. *See Long v. ICE*, 19 F.Supp.3d 39, 55 (D.D.C. 2015). But we specifically avoided using such terms in our Request and limited our request to particular kinds of documents. An unreasonable burden can also exist if an agency has to review, redact, or arrange for inspection a vast quantity of material. *Id.* at 55-56 (citing *Am. Fed'n of Gov't Employees, Local 2782 v. U.S. Dep't of Commerce*, 907 F.2d 203, 209 (D.C. Cir. 1990)). Here, the IRS has failed to explain the quantity of material it would have to review. The letter simply stated that there was an unreasonable burden and refused to review our Request without describing the number of documents the IRS would have to review.

The IRS cannot, at such an early stage, refuse to consider our request under the unreasonable burden standard without describing the anticipated burden it would face and

---

[3] Moreover, it is not clear that the IRS can invoke its internal Manual as a basis to deny a request. The Treasury Department has published formal rules regarding FOIA that do not contain any requirement to specify contract numbers. Moreover, FOIA itself only authorizes agencies to issue "rules stating the time, place, fees (if any), and procedures to be followed" in making a request. It is doubtful that an agency may evade FOIA obligations by invoking the authority of an internal Manual that purports to impose requirements not contemplated either by FOIA or duly promulgated agency regulations.

5

allowing us the opportunity to address any particularized concerns that specific items of the request might create an unreasonable burden because of, for example, the manner in which the IRS organizes is files or the volume of potentially responsive records. As noted above, we stand ready to work with agency officials to sharpen or narrow the Request, but we can only meaningfully do so if we understand the specific nature of the IRS's concerns.

### C. The IRS has failed to process the Request in a timely manner.

The IRS has indicated that it intends to "administratively close" our Request if we do not revise it. The IRS has also asserted that the twenty-day statutory period for responding to the Request will not begin to run until we have submitted a revised request. These responses are improper. FOIA contains no provisions that allows an agency to disregard a request or stop the clock on its deadlines simply because the agency asserts that the request does not "reasonably describe" the records sought. To the contrary, the statute requires that "each agency, upon request for records made under paragraph (1), (2), or (3) of this subsection, shall…determine within 20 days after receipt of any such request whether to comply with such request and shall immediately notify the person making such request of such determination and the reasons thereof…" 5 U.S.C. § 552(a)(6)(A)(i). Here, the IRS has already passed this twenty-day deadline and, in our view, is already in violation of FOIA for that reason.

Moreover, while the October 4 letter purported to be a "final response" it did not provide the Requesters with an opportunity to appeal. Instead, it stated that the IRS "will be forced to close [the] request," with apparently no opportunity to appeal. This, too, is contrary to FOIA, which requires agencies to give a requester the right to appeal in the event of any "adverse determination." 5 U.S.C. § 552(a)(6)(A)(i)(III). As it stands, the letter appears to put Requesters in the untenable and unlawful position of being deprived of any opportunity to pursue their request as written. The IRS may not in this way deprive a requester of the appeal and review rights guaranteed by FOIA.

In short, it is our position that the IRS is required to search for responsive records and release them (or else provide an explanation for withholding) as soon as possible, and that the twenty-day period for responding to requests has already lapsed.

We would be glad to work with agency officials to refine the request if and when they encounter difficulties in processing. But without more information about the difficulties, if any, that the IRS would face in processing the request as written, we are unable meaningfully to revise the request, except to add a date range.

For the foregoing reasons, we respectfully ask that the IRS begin processing the request immediately. We also ask that the IRS immediately grant our requests for expedited processing, a public interest fee waiver, and a limitation of fees. *See* Ex. A.

Please direct all correspondence relating to this request to:

> Jonathan Manes
> Civil Liberties & Transparency Clinic
> University at Buffalo School of Law
> 507 O'Brian Hall, North Campus
> Buffalo, NY 14260-1100
> (716) 645-6222
> jmmanes@buffalo.edu

Thank you for your prompt attention to this matter.

Sincerely,

*/s/ Jonathan Manes by RJM*

| | |
|---|---|
| Brett Max Kaufman<br>Vera Eidelman<br>American Civil Liberties Union Foundation<br>125 Broad Street, 18th Floor<br>New York, NY 10004<br>bkaufman@aclu.org<br>veidelman@aclu.org | Jonathan Manes, *supervising attorney*<br>Alex Betschen, *student attorney*<br>RJ McDonald, *student attorney*<br>Colton Kells, *student attorney*<br>Civil Liberties and Transparency Clinic<br>University at Buffalo School of Law, SUNY<br>507 O'Brian Hall, North Campus<br>Buffalo, NY 14260-1100<br>Tel: 716.645.6222<br>jmmanes@buffalo.edu |
| Jennifer Stisa Granick<br>American Civil Liberties Union Foundation<br>39 Drumm Street<br>San Francisco, CA 94111<br>Tel: 415.343.0758<br>jgranick@aclu.org | Scarlet Kim<br>Privacy International<br>62 Britton Street<br>London EC1M 5UY<br>United Kingdom<br>Tel: +44 (0)203 422 4321<br>scarlet@privacyinternational.org |

7