# Exhibit V



**University at Buffalo**
**Clinical Legal Education**
School of Law

December 12, 2018

Freedom of Information Act Appeal re: Expedited Processing
FOIA/PA Appeals Unit
DHS Inspector General
STOP 0305
245 Murray Lane, SW
Washington, DC 20528-0305

      **RE:    FOIA Appeal of Expedited Processing**
               **Request No. 2018-IGFO-00203**

Dear Sir or Madam:

      We write on behalf of the co-requestors Privacy International ("PI"), the American Civil Liberties Union, and the American Civil Liberties Union Foundation (together, the "ACLU"), and the Civil Liberties and Transparency Clinic of the University at Buffalo School of Law ("CLTC"), to appeal your agency's September 21, 2018, decision denying expedited processing of our September 13, 2018, Freedom of Information Act ("FOIA") request.

      **I.    Background**

      By letter dated September 10, 2018, PI, ACLU, and CLTC requested from the Department of Homeland Security's Office of Inspector General ("DHS-OIG") copies of records related to investigations or audits into the use of computer hacking tools by law enforcement agents. The FOIA request (attached hereto as Exhibit A) sought two categories of records and asked for expedited processing under 5 U.S.C. § 552(a)(6)(E).

      As of today, we have received one letter in response to our request to DHS-OIG. The letter, from Disclosure Specialist Glenn Lewis and dated September 21, 2018, acknowledged receipt of our request and denied expedited processing (attached as Exhibit B). We have received no documents from your agency responsive to our request, nor has DHS-OIG cited any FOIA exemptions as a basis for refusing to disclose records.[1]

      **II.    Basis for Appeal**

      Pursuant to Department of Homeland Security FOIA regulations, 6 C.F.R § 5.5(e)(4), we hereby timely appeal DHS OIG's refusal to grant expedited processing. DHS-OIG's denial letter cites two regulatory criteria as the basis for denying expedited processing: (1) the requirement to show that the requests involve an "urgency to inform the

---

[1] This appeal is timely filed within 90 days of receipt of Mr. Lewis' letter denying our request for expedited processing. We received that letter on September 21, 2018.

507 O'Brian Hall, Buffalo, NY 14260-1100
716.645.6222  (F) 716.645.2167
jmmanes@buffalo.edu

www.buffalo.edu

public" about federal government activity, and (2) the requirement to include a statement "explaining in detail the basis for the request for expedited processing." The letter states without elaboration that expedited processing is being denied "[b]ased on these regulatory criteria," but it does not offer any meaningful explanation as to why the request fails to meet them. As demonstrated presently, neither of these bases for denial apply to our request.

### A. Requestors have demonstrated an "urgency to inform the public."

PI, the ACLU and CLTC's detailed FOIA request amply demonstrates that there is an urgency to inform the public about the governments use of hacking tools. FOIA and DHS regulations require expedited processing of requests when a "compelling need" for information that creates an "urgency to inform the public concerning actual or alleged Federal Government activity" and the request is "made by a person who is primarily engaged in disseminating information." 5 U.S.C. § 552(a)(6)(E); 6 C.F.R § 5.5(e)(ii). DHS regulations elaborate that the requester "must establish a particular urgency . . . that extends beyond the public's right to know about government activity generally." 6 C.F.R. § 5.5(e)(3). Importantly, DHS regulations provide that "[t]he existence of numerous articles published on a given subject can be helpful to establishing the requirement that there be an 'urgency to inform' the public on the topic." *Id.*

PI, ACLU, and CLTC's request satisfies the criteria specified in the statute and DHS regulations. The request demonstrates that these there is an "urgency to inform the public" concerning government hacking technologies and, in particular, any DHS-OIG investigations or audits of government hacking techniques. The request elaborates in great detail on the matter or activity in question and "why the records sought are necessary to be provided on an expedited basis." *Id.* Indeed, the request includes more than eight pages of information about law enforcement agencies' deployment of hacking and related social engineering techniques to access and gather information on computer systems. *See* Ex. A, at 1-8, 16-17. These explanations are supported by numerous footnoted citations to sources and authority. *Id.*

Moreover, the request demonstrates that the government's use and misuse of hacking technology has created an "urgency to inform the public on the topic" by citing to "numerous articles on the subject" published in newspapers, 6 C.F.R. § 5.5(e)(3), as well as recent reports from NGOs and other sources—including an OIG report from another law enforcement agency. Nearly all of th ese sources are from from the past year or two. *See* Ex. A, at notes 3-21, 34-36, 43, 55-56 and accompanying text. Additionally, numerous breaking news stories have recently been published on the government's use of hacking tools. *See* Ex A, at 16 & n.55. At least one of these breaking news stories resulted in an Department of Justice OIG investigation that itself was the subject of considerable media interest. *See id.* at 16 n. 56. In the short time since the request was filed, there have been yet more news stories about government hacking, including by components of DHS.[2] All of these sources

---

[2] See, e.g., Thomas Brewster, Trump's Immigration Cops Just Gave America's Hottest iPhone Hackers Their Biggest Payday Yet, Forbes, Sep. 18, 2018, https://www.forbes.com/sites/thomasbrewster/2018/09/18/ice-just-gave-americas-hottest-iphone-hackers-their-biggest-payday-yet/#216552b04d02; Lorenzo Franceschi-Bicchierai, *Malware Companies Are Finding New*

2

demonstrate, individually and collectively, that there is an immediate, current, and ongoing public interest in this topic "that extends beyond the public's right to know about government activity generally" 6 C.F.R. § 5.5(e)(3).

The request elaborates specific reasons why this subject matter is of *current* exigency to the American public. Failure to obtain prompt disclosure would compromise an urgent interest of the general public in understanding how the government is using—and whether the government is misusing—a new and extraordinarily intrusive investigative technology. The request shows, for example, that these techniques are proliferating rapidly, particularly now that they are available commercially to law enforcement agencies. As the request explains, Privacy International has identified over 500 surveillance technology companies that sell products and services exclusively to government clients for law enforcement and intelligence-gathering purposes,[3] including tools to enable hacking.

The rapid proliferation of this technology raises grave concerns about individual privacy and technological security. As the request explains in detail, hacking is a particularly intrusive technology, permitting both remote access to systems as well as novel forms of real-time surveillance. *See* Ex. A at 7. These techniques create a significant potential for misuse, as government actors can weild these techniques covertly and on a wide scale. *See* Ex. A at 8. A single hacking operation can sweep up individuals who are unrelated to a government investigation, potentially violating their rights to privacy and risking the exposure or sensitive information. *See* Ex. A at 8.

Similarly, the use of hacking raises concerns about device security. The government's use of malware might proliferate to systems beyond the target device, and may lead to similar attacks by other actors. *See* Ex. A at 7. Given the potential for misuse of these tools, the public has a strong interst in understanding the rules that govern them. *See* Ex. A at 8. This is especially true for understanding when and where a warrant is required for the government to collect information through the use of hacking tools. *See* Ex. A at 8.

The public thus has an exigent need for information about the kinds of hacking that the government is engaged in and, especially, whether DHS-OIG and other offices of inspector general have investigated for instances of waste, fraud, abuse, illegality, or other problems with respect to such techniques. This information is critical to inform the current and urgent public debate about the wisdom and legality of these methods, and to inform the public about whether the public's constitutional and statutory privacy interests are being violated.

---

*Ways to Spy on iPhones*, Motherboard, Nov. 27, 2018, https://motherboard.vice.com/en_us/article/mby7kq/malware-to-spy-hack-iphones; Joseph Cox, *The FBI Created a Fake FedEx Website to Unmask a Cybercriminal*, Motherboard, Nov. 26, 2018, https://motherboard.vice.com/en_us/article/d3b3xk/the-fbi-created-a-fake-fedex-website-to-unmask-a-cybercriminal;

[3] Privacy International, *Privacy International Launches the Surveillance Industry Index & New Accompanying Report*, Oct. 23, 2017, https://www.privacyinternational.org/blog/54/privacy-international-launches-surveillance-industry-index-new-accompanying-report (last visited July 18, 2018).

3

B. Requesters are "primarily engaged in disseminating information to the public."

PI, the ACLU, and CLTC also satisfy the second prong of the applicable test for a "compelling need" because they are "primarily engaged in disseminating information" within the meaning of the statute and regulation. 5 U.S.C. § 552(a)(6)(E)(v)(II); 6 C.F.R. § 5.5(e)(ii). The request provides more than five pages of evidence to establish this point. *See* Ex. A. at 10-16. To summarize briefly, PI engages in research and litigation specifically in order to shine light on overreaching state and corporate surveillance. PI achieves this goal primarily by disseminating information it gathers to the public by publishing reports, websites, blog posts, and several other types of material meant for general public consumption. *See* Ex. A, at 10-11 & nn. 29-36. Similarly, the ACLU works to defend and preserve the individual rights and liberties guaranteed by the Constitution and laws of the United States by gathering and disseminating information. Indeed, obtaining information about government activity, analyzing that information, and widely publishing and disseminating that information to the press and public are critical and substantial components of the ACLU's work and are among its primary activities. *See* Ex. A, at 11-14 & nn. 37-49. Finally, CLTC is a legal clinic that works in its own name and on behalf of clients to obtain and disseminate information on issues involving technology & privacy and law enforcement accountability, among others. *See* Ex. A., at 15 & nn. 50-53. There is thus no doubt that the requesters satisfy the requirement of being "primarily engaged in disseminating information."[4]

For these reasons, there is an "urgency to inform the public" that justifies expedited processing, and DHS-OIG's denial should be reversed.

### III.   Request for Relief

For the foregoing reasons, we submit that PI, the ACLU, and CLTC are entitled to expedited processing. We respectfully request that you grant expedited processing and immediately begin processing the requested records immediately for potential release.

Please direct all correspondence relating to this request to:

> Jonathan Manes
> Civil Liberties & Transparency Clinic
> University at Buffalo School of Law
> 507 O'Brian Hall, North Campus
> Buffalo, NY 14260-1100
> (716) 645-6222
> jmmanes@buffalo.edu

---

[4] Only one of the requestors needs to qualify in order for expedited processing to be required. *See ACLU v. DOJ*, 321 F. Supp. 2d at 30 n. 5 (citing *Al-Fayed v. CIA*, 254 F.3d 300, 309 (D.C. Cir. 2001) ("[A]s long as one of the plaintiffs qualifies as an entity 'primarily engaged in disseminating information,' this requirement is satisfied.").

Thank you for your prompt attention to this matter.

                              Sincerely,

Brett Max Kaufman  
Vera Eidelman  
American Civil Liberties Union Foundation  
125 Broad Street, 18th Floor  
New York, NY 10004  
bkaufman@aclu.org  
veidelman@aclu.org  

Jonathan Manes, *supervising attorney*  
Alex Betschen, *student attorney*  
RJ McDonald, *student attorney*  
Colton Kells, *student attorney*  
Civil Liberties and Transparency Clinic  
University at Buffalo School of Law, SUNY  
507 O'Brian Hall, North Campus  
Buffalo, NY 14260-1100  
Tel: 716.645.6222  
jmmanes@buffalo.edu  

Jennifer Stisa Granick  
American Civil Liberties Union Foundation  
39 Drumm Street  
San Francisco, CA 94111  
Tel: 415.343.0758  
jgranick@aclu.org  

Scarlet Kim  
Privacy International  
62 Britton Street  
London EC1M 5UY  
United Kingdom  
Tel: +44 (0)203 422 4321  
scarlet@privacyinternational.org