# Exhibit AA



**University at Buffalo**
Clinical Legal Education
School of Law

September 22, 2018

Freedom of Information Act Appeal re: Expedited Processing
Treasury Inspector General for Tax Administration
Office of Chief Counsel
City Center Building
1401 H Street, NW, Suite 469
Washington, D.C. 20005

      **RE:    Appeal of Expedited Processing**
                 **Disclosure File #2018-FOI-00260**

Dear Sir or Madam:

      We write on behalf of the co-requestors Privacy International ("PI"), the American Civil Liberties Union, and the American Civil Liberties Union Foundation (together, the "ACLU"), and the Civil Liberties and Transparency Clinic of the University at Buffalo School of Law ("CLTC"), to appeal your agency's September 12, 2018, decision denying expedited processing of our September 10, 2018, Freedom of Information Act ("FOIA") request.

      **I.    Background**

      By letter dated September 10, 2018, PI, ACLU, and CLTC requested from the Treasury Department's Office of the Inspector General ("OIG") and its affiliate, the Treasury Inspector General for Tax Administration ("TIGTA"), copies of records related to investigations or audits into the use of computer hacking tools by law enforcement agents. The FOIA request (attached hereto as Exhibit A) sought two categories of records and asked for expedited processing under 5 U.S.C. § 552(a)(6)(E).

      As of today, we have received one letter in response to our request to TIGTA. This letter from Disclosure Officer Monica Frye, dated September 12, 2018, acknowledged receipt of our request and denied expedited processing (attached as Exhibit B). We have received no documents from your agency responsive to our request, nor has TIGTA cited any FOIA exemptions as a basis for refusing to disclose records.[1] Interestingly, we received a response to our request from the Treasury Department on September 14, 2018, that *granted* expedited processing of records from the Treasury OIG, in direct conflict with TIGTA's denial (attached as Exhibit C).

---

[1] This appeal is timely filed within 10 days of receipt of Ms. Frye's letter denying our request for expedited processing. We received that letter on September 12, 2018.

507 O'Brian Hall, Buffalo, NY 14260-1100
716.645.6222  (F) 716.645-2167
immanes@buffalo.edu

www.buffalo.edu

## II.    Basis for Appeal

Pursuant to Treasury Department FOIA regulations, 31 C.F.R. § 1.5(e)(5), we hereby timely appeal TIGTA's refusal to grant expedited processing. TIGTA's denial letter cites two regulatory criteria as the basis for denying expedited processing: (1) the requirement to show a "compelling need," and (2) the requirement that a statement showing compelling need must be certified to be true and correct "according to the form prescribed by 28 U.S.C. § 1746." The letter states without elaboration that expedited processing is being denied "[b]ased on these regulatory criteria," but it does not offer any explanation as to why the request fails to meet them. As demonstrated presently, neither of these bases for denial have merit.

### A.    Requestors have demonstrated a "compelling need"

PI, the ACLU and CLTC's detailed FOIA request amply demonstrates that there is a compelling need for disclosure of the information requested. FOIA requires expedited processing of requests when a "compelling need" for the information exists. 5 U.S.C. § 552(a)(6)(E). The Department of the Treasury's regulations elaborate that a "compelling need" exists when there is an "urgency to inform the public concerning actual or alleged Federal Government activity" so long as the request is made by a person "primarily engaged in disseminating information." 31 C.F.R. § 1.5(e)(2)(ii). The regulations further specify that the "standard of 'urgency to inform' requires that records pertain to a matter of current exigency to the American public" and "that delaying a response to a request for records would compromise a significant recognized interest to and throughout the American general public." *Id.* The requester is required to "adequately explain the matter or activity and why the records sought are necessary to be provided on an expedited basis." *Id.*

PI, ACLU, and CLTC's request satisfies the criteria specified in the statute and Treasury regulations. The request demonstrates that these there is an "urgency to inform the public" concerning government hacking technologies and, in particular, any TIGTA investigations or audits of government hacking techniques. The request elaborates in great detail on the "matter or activity" in question and "why the records sought are necessary to be provided on an expedited basis." *Id.* Indeed, the request includes more than eight pages of information about law enforcement agencies' deployment of hacking and related social engineering techniques to access and gather information on computer systems. *See* Ex. A, at 1-8, 16-17. These explanations are supported by numerous footnoted citations to sources and authority. *Id.*

Moreover, the request demonstrates that the government's use and misuse of hacking technology is "a matter of current exigency to the American public." 31 C.F.R. § 1.5(e)(2)(ii). The request cites to numerous newspaper articles, NGO reports, and other sources (including an OIG report from another law enforcement agency) from the past year or two that concern government hacking. *See* Ex. A, at notes 3-21, 34-36, 43, 55-56 and accompanying text. These sources demonstrate, individually and collectively, that there is an immediate, current, and ongoing public interest in this topic "throughout the American general public." 31 C.F.R. § 1.5(e)(2)(ii). Failure to obtain prompt disclosure would

2

"compromise a significant recognized interest" of the general public in understanding how the government is using—and whether the government is misusing—this new and extraordinarily intrusive investigative technology.

The request elaborates specific reasons why this subject matter is of *current* exigency to the American public. The request shows, for example, that these techniques are proliferating rapidly, particularly now that they are available commercially to law enforcement agencies. As the request explains, Privacy International has identified over 500 surveillance technology companies that sell products and services exclusively to government clients for law enforcement and intelligence-gathering purposes,[2] including tools to enable hacking. Moreover, numerous breaking news stories have recently been published on the government's use of hacking tools. *See* Ex A, at 16 & n.55. At least one of these breaking news stories resulted in an OIG investigation that itself was the subject of considerable media interst. *See id.* at 16 n. 56.

The public thus has an exigent need for information about the kinds of hacking that the government is engaged in and, especially, whether TIGTA and other offices of inspector general have investigated for instances of waste, fraud, abuse, illegality, or other problems with respect to such techniques. This information is critical to inform the ongoing and urgent public debate about the wisdom and legality of these methods, and to inform the public about whether the public's constitutional and statutory privacy interests are being respected.

PI, the ACLU, and CLTC also satisfy the other prong of the applicable test for a "compelling need" because they are "primarily engaged in disseminating information" within the meaning of the statute and regulation. 5 U.S.C. § 552(a)(6)(E)(v)(II); 31 C.F.R. § 1.5(e)(2)(ii). The request provides more than five pages of evidence to establish this point. *See* Ex. A. at 10-16. To summarize briefly, PI engages in research and litigation specifically in order to shine light on overreaching state and corporate surveillance. PI achieves this goal primarily by disseminating information it gathers to the public by publishing reports, websites, blog posts, and several other types of material meant for general public consumption. *See* Ex. A, at 10-11 & nn. 29-36. Similarly, the ACLU works to defend and preserve the individual rights and liberties guaranteed by the Constitution and laws of the United States by gathering and disseminating information. Indeed, obtaining information about government activity, analyzing that information, and widely publishing and disseminating that information to the press and public are critical and substantial components of the ACLU's work and are among its primary activities. *See* Ex. A, at 11-14 & nn. 37-49. Finally, CLTC is a legal clinic that works in its own name and on behalf of clients to obtain and disseminate information on issues involving technology & privacy and law enforcement accountability, among others. *See* Ex. A., at 15 & nn. 50-53. There is thus no doubt that the requesters satisfy the requirement of being "primarily engaged in disseminating information."[3]

---

[2] Privacy International, *Privacy International Launches the Surveillance Industry Index & New Accompanying Report*, Oct. 23, 2017, https://www.privacyinternational.org/blog/54/privacy-international-launches-surveillance-industry-index-new-accompanying-report (last visited July 18, 2018).

[3] Only one of the requestors needs to qualify in order for expedited processing to be required. *See*

3

For these reasons, there is a "compelling need" that justifies expedited processing, and TIGTA's denial should be reversed.

### B. Requestors satisfied FOIA's requirement to provide a certification in support of expedited processing.

TIGTA appears to have denied expedited processing in part because the request did not contain a certification as to the truth of requestor's statements demonstrating a compelling need. *See* Ex. B. at 1. This ground for denial fails because the request did in fact contain the certification required by FOIA. *See* Ex. A, at 17. In particular, FOIA states that a requestor's "demonstration of compelling need" must "be made by a statement certified by such person to be true and correct to the best of such person's knowledge." 5 U.S.C. § 552(a)(6)(E)(vi). The request at issue in this appeal contained precisely that certification, stating, "The undersigned certify, pursuant to 5 U.S.C. § 552(a)(6)(E)(vi), that the information provided is true and correct to the best of their knowledge and belief." *See* Ex. A. at 17.

It appears that TIGTA's denial may be premised on the theory that the certification did not contain the precise words that the Treasury Department has sought to require by regulation. Specifically, the Treasury Department's regulations provide:

> A demonstration of a compelling need by a person making a request for expedited processing shall be made by a statement certified by the requester to be true and correct to the best of his or her knowledge and belief. The statement must be in the form prescribed by 28 U.S.C. 1746, "I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. Executed on [date]." [31 C.F.R. § 1.5(e)(3).]

This basis for denial fails for a number of reasons. *First*, the certification that is included in the request is, in substance and effect, indistinguishable from the one that the Treasury regulation purports to require. The request certified that the requestors were telling the truth, to the best of their knowledge and belief. In this regard, it is worth noting again that the Treasury Department has granted the requestors expedited processing with respect to their separate request for records from the Treasury OIG. This strongly suggests that the Department itself does not believe it can insist on the specific wording found in the regulation where a requester has included the specific wording prescribed by the statute.

*Second*, to the extent that the Treasury regulation purports to require the certification to be in the specific form of an unsworn affidavit, as prescribed by 28 U.S.C. § 1746, the regulations are in conflict with FOIA and are invalid. The Treasury Department cannot impose additional and idiosyncratic requirements on FOIA requestors that conflict with the plain terms of the statute. *See Al-Fayed v. CIA*, 254 F.3d 300, 307 (D.C. Cir. 2001);

---

*ACLU v. DOJ*, 321 F. Supp. 2d at 30 n. 5 (citing *Al-Fayed v. CIA*, 254 F.3d 300, 309 (D.C. Cir. 2001) ("[A]s long as one of the plaintiffs qualifies as an entity 'primarily engaged in disseminating information,' this requirement is satisfied.").

4

*Gonzales and Gonzales Bonds and Ins. Agency v. U.S. Dep't of Homeland Security*, 913 F. Supp. 2d 865 (N.D. Cal. 2012).

      FOIA clearly and explicitly requires only a "statement certified by such person to be true and correct to the best of such person's knowledge and belief." It explicitly *does not* require the statement to be "sworn" or otherwise to be made under penalty of perjury. It certainly does not require the precise form of words found in 28 U.S.C. §1746.

      To the contrary, the text of FOIA evidences a congressional intent *not* to require statements to be made under penalty of perjury or in the form of an unsworn declaration pursuant to 28 U.S.C. § 1746.  FOIA requires the requester only to certify that his or her statements are true "to the best of such person's knowledge and belief."  There is of course a crucial difference between statements made "to the best of one's knowledge and belief" and statements made upon *personal* knowledge.  Only the latter are typically the subject of sworn testimony or affidavits under penalty of perjury. By using the language it did, Congress indicated its clear intent not to require *personal* knowledge of the facts, but instead only a *belief* that the facts are true. It therefore contradicts Congress' intent to require FOIA requesters to make the required statement under penalty of perjury pursuant to 28 U.S.C. § 1746.

      Treasury's effort to incorporate a "penalty of perjury" requirement—and to require that a specific form of words be used in the certification—thus contradicts the plain text of FOIA and is invalid. *See Al-Fayed*, 254 F.3d at 307 ("[Where a] term is defined by FOIA itself, and because the definition applies across the government, district courts may not defer to any individual agency's effort to elaborate upon that definition—whether through case-specific determinations or through regulations"); *Pub. Citizen Health Research Group v. FDA*, 704 F.2d 1280, 1287 (D.C. Cir. 1983) (declining to defer to a regulation defining a provision of FOIA, because doing so "would produce an intolerable situation in which different agencies could adopt inconsistent interpretations of the FOIA").

      In short, the requestors here precisely complied with the certification requirements of the FOIA statute. Treasury cannot deny requestors' their statutory right to expedited processing based on a supposed failure to use specific wording not required or contemplated by the statute.

      Nevertheless, without conceding the lawfulness of Treasury's regulation and in order to avoid an improper denial of expedited processing on the basis of a technicality, requesters are happy to cure the supposed defect in their original request.  We therefore make the certification here with respect to the original request in the form set out by the Treasury regulations and 28 U.S.C. § 1746:

5

> I declare under penalty of perjury that the statement offered to demonstrate compelling need, attached hereto as Exhibit A, is true and correct to the best of my knowledge and belief. Executed on September 21, 2018.
>
> _____
> Jonathan Manes

### III.  Request for Relief

For the foregoing reasons, we submit that PI, the ACLU, and CLTC are entitled to expedited processing. We respectfully request that you grant expedited processing and immediately begin processing the requested records for potential release.

We trust that we will receive your decision within 10 business days as required by 31 C.F.R. § 1.5(e)(6). Please direct all correspondence relating to this request to:

> Jonathan Manes
> Civil Liberties & Transparency Clinic
> University at Buffalo School of Law
> 507 O'Brian Hall, North Campus
> Buffalo, NY 14260-1100
> (716) 645-6222
> jmmanes@buffalo.edu

Thank you for your prompt attention to this matter.

Sincerely,

_____

| | |
|---|---|
| Brett Max Kaufman<br>Vera Eidelman<br>American Civil Liberties Union Foundation<br>125 Broad Street, 18th Floor<br>New York, NY 10004<br>bkaufman@aclu.org<br>veidelman@aclu.org | Jonathan Manes, *supervising attorney*<br>Alex Betschen, *student attorney*<br>RJ McDonald, *student attorney*<br>Colton Kells, *student attorney*<br>Civil Liberties and Transparency Clinic<br>University at Buffalo School of Law, SUNY<br>507 O'Brian Hall, North Campus<br>Buffalo, NY 14260-1100<br>Tel: 716.645.6222<br>jmmanes@buffalo.edu |

Jennifer Stisa Granick
American Civil Liberties Union Foundation
39 Drumm Street
San Francisco, CA 94111
Tel: 415.343.0758
jgranick@aclu.org

Scarlet Kim
Privacy International
62 Britton Street
London EC1M 5UY
United Kingdom
Tel: +44 (0)203 422 4321
scarlet@privacyinternational.org