UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

PRIVACY INTERNATIONAL, AMERICAN CIVIL LIBERTIES UNION, AMERICAN CIVIL LIBERTIES UNION FOUNDATION; and CIVIL LIBERTIES AND TRANSPARENCY CLINIC,

Plaintiffs,

v. 18-CV-1488

FEDERAL BUREAU OF INVESTIGATION, et al.

Defendants.

---

**DEFENDANTS' STATUS REPORT**

Pursuant to the order of Magistrate Judge Hugh B. Scott dated August 1, 2019 (ECF No. 21), defendants Federal Bureau of Investigation ("FBI"), Drug Enforcement Administration ("DEA"), Department of Justice Criminal Division, U.S. Immigration and Customs Enforcement ("ICE"), U.S. Customs and Border Protection ("CBP"), Internal Revenue Service ("IRS"), U.S. Secret Service ("USSS"), Department of Justice Office of Inspector General ("DOJ-OIG"), Department of Homeland Security Office of the Inspector General ("DHS-OIG"), Department of Treasury Office of the Inspector General ("Treasury-OIG") and Treasury Inspector General for Tax Administration ("TIGTA") hereby file this status report.

In this action, plaintiffs seek to compel the production of records under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). This status report describes the background of plaintiffs' FOIA requests, the efforts by the parties to clarify and narrow the scope of plaintiffs' FOIA requests, the current status of defendants' search and review of the records, and the outstanding issues between plaintiffs and defendants.

1. Plaintiffs' FOIA Requests: In September 2018, plaintiffs submitted two FOIA requests seeking to compel records related to what plaintiffs characterized as the Government's use of "hacking" as an investigative technique to pursue ordinary law enforcement investigations. Am. Comp. ¶¶ 1, 56, ECF No. 5. The first request (which plaintiffs characterize as the "Law Enforcement Request") was submitted to seven agencies: FBI, DEA, DOJ-Criminal Division, ICE, CBP, USSS, and IRS. *Id.* ¶¶ 56-59. The second request (which plaintiffs characterize as the "OIG request") was submitted to DOJ-OIG, DHS-OIG, Treasury-OIG, and TIGTA. *Id.* ¶¶ 60-62. Copies of the requests are attached to plaintiffs' amended complaint as Exhibits A and B.

2. Efforts by the Parties to Clarify and/or Narrow the Scope of the FOIA Requests: Counsel for the parties have been involved in extensive discussions and negotiations, through letter, emails and telephone conferences, in an effort to clarify and/or narrow the FOIA requests.

3. On March 28, 2019, counsel for defendants sent plaintiffs' counsel a letter (via email) explaining that "hacking" is not a term used by the Government to describe its investigative techniques and is ordinarily understood to refer to unauthorized access to a computer or other electronic devices. Defendants proposed to clarify the request as seeking "records related to investigative techniques that involve remote transmittal of code to effect the agency's ability to access via the internet, without the owner's knowledge, particularized information from computer systems or other devices not in the Government's possession and that have been deployed in criminal law enforcement investigations." In the letter, defendants also objected to certain categories of the request identified in the Law Enforcement Request on the grounds that they were overboard and unduly burdensome. For example, defendants explained that a search of individual investigative files would be unduly burdensome because (1) the

agencies do not maintain a list of the particular cases in which such investigative techniques have been used, if at all, and (2) the agencies' investigative files are not indexed or organized in such a way that information about the investigative techniques used could be identified within the files. Defendants also noted that plaintiffs' request did not contain a time frame for the records. Defendants proposed using December 1, 2016 as the start date.

4. Plaintiffs' counsel sent a letter response on April 8, 2019 by email. In their response, plaintiffs raised three objections to defendants' proposed definition of the investigative technique at issue. In addition, they also sought to clarify certain categories of the records sought in their Law Enforcement Request. In the letter, Plaintiffs also stated that they understood the concern about the difficulty of searching through individual investigative files and would like to find a way for each agency to conduct a meaningful search without having to review all case files. They suggested there may be particular offices or employees who are responsible for providing guidance on use of such techniques. With respect to the time frame, plaintiffs suggested (1) for categories 1.b and 2 of the request – from January 1, 2009 (10 years) to the date the search begins, and (2) for the rest of the categories – from January 1, 2014 (5 years) to the date the search beings.

5. Counsel for the parties had a telephone conference on April 15, 2019, to discuss defendants' letter and plaintiffs' response. In that telephone conference, plaintiffs' counsel indicated that they required additional time to provide a more comprehensive response, including information that they had previously indicated, in their April 8 letter, would be forthcoming.

6. On May 21, 2019, by email, plaintiffs' counsel sent defendants' counsel a proposed alternative definition of the investigative technique at issue.

7. On July 12, 2019 (via email), defendants' counsel sent plaintiffs' counsel a letter explaining that it could not accept plaintiffs' alternative definition because it unacceptably expands the definition of the investigative technique at issue to include techniques used to search or unlock devices in the Government's possession. Defendants noted that although plaintiffs' April 8th letter raised three objections in Defendants' proposed definition, they had not raised an objection to the distinction that defendants had drawn between techniques allowing the Government to gain remote access and techniques used by the Government to search or unlock devices that the Government had in its possession. In an attempt to resolve the matter, defendants agreed to modify their proposed definition to address the three objections raised in the April 8th letter: "Records related to investigative techniques that involve remote transmittal of code to effect the agency's ability to access, without the owner's knowledge, information from computer systems or other devices not in the Government's possession and that have been deployed in criminal and/or civil law enforcement investigations, including but not limited to the following: immigration, customs, border, tax, drugs, computer crimes, and financial enforcement efforts." Defendants further agreed to adopt the time frames set forth by plaintiffs in their April 8th letter.

8. In the letter, defendants stated that in order to keep this case moving forward they intend to begin searching for records using the definition and time frame set forth in the letter. In addition, they stated that, consistent with the objections previously noted, defendants would not be searching: (1) individual investigative files or records that must be searched at the Field Office level; (2) records responsive to category 1.e ("Marketing, promotional, or informational material from external conferences, trade shows, training sessions, or similar events that employees have attended"); and (3) records responsive to category 5 ("communications with

local, state, and/or federal agencies or foreign entities, including foreign law enforcement agencies, that concern "computer network exploitation" or "network investigative techniques").[1] In addition, the Internal Revenue Service would not be searching for information contained in individual files because any information in individual case files would be "returns" or "return information" as defined in 26 U.S.C. § 6103(b)(1) and (b)(2), which is not subject to disclosure and is thus protected by Exemption 3. Finally, defendants requested that plaintiffs stipulate to the dismissal of the three agencies – TIGTA, DHS-OIG, and Treasury-OIG – that conducted searches in response to plaintiffs' OIG Request and found no records.

9. On July 31, 2019, plaintiffs' counsel sent an email responding to defendants' letter. In the letter, plaintiffs proposed amending the definition of the investigative technique at issue by changing the words "without the owner's knowledge" to "without the owner's knowing and informed consent." They also raised objections to defendants' statement that they would not search any individual investigative files or records at the field level or records responsive to categories 1.e. and 5 of the request. In addition, they requested that defendants provide a timetable by which each agency will complete its search. Finally, they stated that before they could agree to stipulate to the dismissal of TIGTA, DHS-OIG, and Treasury−OIG, they would need information on how the agencies conducted their searches.

10. In an email response on July 31, 2019, defendants' counsel explained that the agencies (except for the three agencies that had already completed their searches) are moving forward with their searches based on the interpretation and parameters set forth in their July 12,

[1] Defendants also noted that categories 1.a.-d. and 2-4 remain very broad categories, and it is possible that an agency may not be able to determine whether these remaining categories are unduly burdensome, unreasonably broad, or not reasonably described until after the search has begun. As such, the agencies do not waive these arguments or defenses with regard to categories 1.a.-d. and 2-4 if they are determined to apply after the search has begun.

2019 letter. Defendants' counsel explained that, at this time, the defendants were unable to provide an estimate of the date by which they will be able to complete their searches or productions. Defendants' counsel indicated that defendants planned to file a motion for an order (1) adjourning the July 31, 2019 deadline to submit a proposed scheduling order and (2) setting a status conference in September to discuss the progress of this matter.

11. On July 31, 2019, defendants filed their motion for an order adjourning the deadline for submission of a scheduling order and setting a status conference. *See* ECF No. 18.

12. On August 1, 2019, Magistrate Judge Scott granted the motion (ECF No. 19) and issued an order requiring the parties to submit a proposed scheduling order or status report by September 10, 2019. ECF No. 21.

13. The order set a status for September 11, 2019 at 10:45 a.m.

14. Pursuant to that order, the parties corresponded and had a telephone conference on September 5, 2019, to discuss the status of the searches and concerns raised by plaintiffs regarding the search plan set forth by defendants in their July 12, 2019 letter. . The parties were unable to resolve certain issues. Those issues are described in paragraphs 17 to 23 below.

15. <u>Status of Defendants' Searches</u>: As explained below, except for TIGTA, DHS-OIG, Treasury-OIG and CBP, the agencies are still in process of completing their searches or review of the records.

a. <u>IRS</u>: IRS expects to complete its search by September 30, 2019. Once it has completed its search, it will need time to assess the volume and nature of the records before it can propose a production schedule. IRS estimates that it will be able to propose a production schedule by October 15, 2019.

b. DEA: DEA expects to complete its search by September 30, 2019. Once it has completed its search, it will need time to assess the volume and nature of the records before it can propose a production schedule. DEA estimates that it will be able to propose a production schedule by October 15, 2019.

c. Criminal Division: The Criminal Division expects to complete its search by September 30, 2019. Once it has completed its search, it will need time to assess the volume and nature of the records before it can propose a production schedule. The Criminal Division estimates that it will be able to propose a production schedule by October 15, 2019.

d. FBI: The FBI has begun its search, but due to the broad nature of the request, responsive records are not expected to be identified through a single database. Instead, the nature of the request and the search process requires the active participation of many subject matter experts and coordination and consultation among multiple components in order to best direct the search efforts for potentially responsive information. As such, a comprehensive assessment of how long the search will take needs to rely on multiple individual components' evaluation of the information they possess, which is an ongoing part of the search. Until the search has progressed further, the FBI will not be able to provide an estimate of search completion. Additionally, a complicating factor is that most of the components and individuals with the technical expertise and understanding to perform the search and to make these evaluations have primary operational or operational support responsibilities involving the FBI's critical national security and law enforcement functions that cannot be sidelined,

postponed, or jeopardized. Thus, although the search has begun, due to the requirements of the search and overriding mission critical priorities, the universe of potentially responsive records cannot be determined at this time. The FBI plans to provide an update on the status of its search by November 8, 2019.

e. ICE: ICE has completed its search. It estimates that it will be able to complete its review and produce any non-exempt record or portions of records by October 15, 2019.

f. CBP: CBP has completed its search and has not identified any responsive records.

g. USSS: USSS has completed its search and identified some potentially responsive records. It expects to complete its review and produce any non-exempt records or portions of records by October 15, 2019.

h. DOJ-OIG: DOJ-OIG is currently conducting supplementary electronic searches and reviewing materials for responsiveness. It anticipates concluding its process of searching and identifying responsive documents within two months. Thereafter, DOJ-OIG will process any responsive records and make rolling productions on a monthly basis. In its September 28, 2018 letter to Plaintiffs, it identified three of its public reports as ones that may be responsive to Plaintiffs' FOIA request. Upon further review and consideration, DOJ-OIG has concluded that only one of these three reports is responsive to Plaintiffs' FOIA request, "A Review of the FBI's Impersonation of a Journalist in a Criminal Investigation," available at https://oig.justice.gov/reports/2016/o1607.pdf. As part of its search and processing, DOJ-OIG will process the records that it relied upon in the course

of preparing this report, although it proposes one modification for Plaintiffs' consideration, which Plaintiffs agreed to consider.[2]

16. Three OIGs – TIGTA, DHS-OIG and Treasury-OIG have completed their searches and found no responsive records. Defendants have requested plaintiffs to stipulate to the dismissal of these three defendants. Plaintiffs requested these agencies to provide information of the nature of their searches. Pursuant to that request, defendants provided plaintiffs with descriptions of the searches conducted by each of these agencies on September 3, 2019.

17. Issues Remaining for Resolution: In their telephone conference on September 5, 2019, the parties were unable to reach an agreement on the definition of the investigative technique at issue and the scope of the search. Plaintiffs also expressed concern the status of the searches. Those issues are discussed below.

18. *Definition of the Investigative Technique*: In their July 12, 2019 letter, defendants explained that they were interpreting plaintiffs' request as seeking the following: "Records related to investigative techniques that involve remote transmittal of code to effect the agency's ability to access, without the owner's knowledge, information from computer systems or other devices not in the Government's possession and that have been deployed in criminal and/or civil law enforcement investigations, including but not limited to the following: immigration, customs, border, tax, drugs, computer crimes, and financial enforcement efforts." Plaintiffs proposed changing the words "without the owner's knowledge" to "without the owner's knowing and informed consent." Defendants cannot agree. In addition to raising difficult legal questions

[2] Specifically, DOJ-OIG proposes to process any records that the OIG relied upon in the report's discussion of the FBI's use of a Computer & Internet Protocol Address Verifier (CIPAV), such as the discussion on portions of pages 11 through 16 of the report, but not to process records that the DOJ-OIG relied upon to prepare portions of the report focused on matters other than the FBI's use of the CIPAV.

as to what constitutes "informed consent," it is also confusing because it is difficult to understand what types of techniques plaintiffs are seeking to include by this proposed modification to the definition. In their July 31, 2019 email, plaintiffs suggested this amendment to the definition was designed to cover "circumstances in which a person may be told or somehow informed that their computer system or other device is being investigated but the investigative method is being conducted without their consent." Defendants do not understand how such a circumstance could be classified by any reasonable definition as "hacking," which is what plaintiffs' request purportedly sought. In paragraph 35 of the Amended Complaint, plaintiffs state that "[h]acking enables governments to remotely and surreptitiously access computers and the data stored on them." If an individual knows his device or computer system is being investigated, then it is not surreptitious. In short, it seems that plaintiffs are trying to expand the request to include other types of investigative technique. Defendants cannot, therefore, agree to this change.

19. *Scope of search*: Defendants set forth certain limitations on the scope of the search. Plaintiffs have raised objections to three of the limitations. Specifically, they objected to defendants' statement that they would not search: (1) any individual investigative files or records at the field office level; (2) any records responsive to category 1.e. of the request (which sought "marketing, promotional, or informational material from external conferences, trade shows, training sessions, or similar events that employees of the agency have attended); and (3) records responsive to category 5 (which sought "communications with local, state, and/or federal agencies or foreign entities, including foreign law enforcement agencies that concern 'computer network exploitation' or 'network investigative techniques'"). As explained below, defendants believe that these limitations set forth in defendants' search plan are reasonable.

20. *Individual investigative files or records at field offices*: Defendants explained that, to the extent that any agencies may have deployed such investigative techniques, they do not maintain a centralized repository identifying the cases in which such techniques have been used. Thus, a search to identify such information within cases would require an agency to search through all of its individual investigative files. Such searches would be burdensome because the agencies' investigative files are not indexed or organized in such a way that information about the investigative techniques used could be identified within the file. Thus, in order to identify the particular cases, if any, in which such techniques may have been used, the agency would be required to conduct a manual search of the investigative files, which are located in various field offices. For example, the Drug Enforcement Administration has 222 domestic offices and 90 field offices. The FBI has (1) 56 field offices with 350 satellite offices (known as resident agencies) associated with those field offices and (2) more than 60 legal attaché offices.[3] In plaintiffs' initial April 8, 2019 letter, plaintiffs stated that they "understand [defendants'] concern about the difficulty of searching through individual case files and would like to find a way for each agency to conduct a meaningful search without having to review all case files." Plaintiffs suggested that there may be particular offices or employees in agency headquarters' locations who are reasonably likely to have responsive records, if they exist, regarding the use of the investigative technique at issue. To the extent possible, Defendants have identified such

[3] In addition to the burden issue, there is an additional consideration with respect to the IRS files. Due to a statutory prohibition, the IRS is precluded from disclosing information contained in individual IRS case files. Material contained in such files consists of returns and return information of that particular individual. Returns and return information, defined at I.R.C. §§ 6103(b)(1) and (b)(2), respectively, are confidential pursuant to I.R.C. § 6103(a) and exempt from disclosure under the FOIA pursuant to FOIA subsection (b)(3) in conjunction with I.R.C. § 6103(a). To the extent that the IRS has any information responsive to category 3 of Plaintiffs' request that does not constitute returns or return information, the IRS will search for such records.

components or in some cases, individuals likely to have responsive records, and are conducting searches of those components' or individuals' records.

21. *Category 1.e. − Promotional and Marketing Materials by Vendors*: This category sought "marketing, promotional, or information material including material from external conferences, trade shows, training sessions, or similar events that employees of the agency have attended." As defendants explained in their letters to plaintiffs, this subcategory of records is unduly burdensome, unreasonably broad, and does not reasonably describe the records sought. The primary purpose of plaintiffs' request is to seek information about techniques that have actually been deployed by law enforcement agencies in criminal investigations. The request for this subcategory is thus overbroad because it seeks promotional and marketing information regarding techniques that have never been deployed by the agency. In short, it seeks material that an employee may have simply received at a conference and placed in his desk or files. Due to the informal ways in which such third party vendor materials might be received, there is no centralized repository for such records. Thus, defendants cannot agree to conduct a search for such material.

22. *Category 5* − Communications with local, state and/or federal agencies or foreign law enforcement agencies concerning "computer network exploitation" or "network investigative techniques": In defendants' July 12th letter, defendants stated this request was unduly burdensome, unreasonably broad, and does not reasonably describe records sought. With the exception of the Criminal Division, each of the defendant law enforcement agencies have field offices, which work with or have communications with other law enforcement agencies on a variety of matters. Thus, this request would require a search of the communications of employees in the various field offices to determine whether any of the communications may have

mentioned "computer network exploitation" or "network investigative techniques," a search which would be unduly burdensome. As explained above, the agencies have identified the functional offices at the headquarters level and/or employees in such offices which are reasonably likely to have records regarding the investigative technique at issue, if such records exists. As part of that search, the agencies are searching for records responsive to category 4 which seeks "licenses, waivers or agreements with local, state and/or federal agencies or foreign entities, including foreign law enforcement agencies, concerning the use [of the investigative technique at issue]." Thus, to the extent that there is agreement with another agency, it would be covered. However, an overall search for all communications with defendant agencies related to a very general subject matter with any of those entities that have tens of thousands of employees is unduly burdensome.

23. *Timetable for completion of search and production*: As explained in paragraph 15, some agencies are still in the process of completing their searches and thus cannot provide a specific timetable for their production.

Respectfully submitted,

JAMES P. KENNEDY, JR.
United States Attorney

MICHAEL S. CERRONE
Assistant U.S. Attorney
U.S. Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
716-843-5851
Michael.cerrone@usdoj.gov

JOSEPH H. HUNT
Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

s/Marcia K. Sowles
MARCIA K. SOWLES
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W. Room 11028
Washington, D.C. 20005
202 514-4960
Marcia.sowles@usdoj.gov

Attorneys for Defendants