

September 10, 2019

**BY ECF**

The Honorable Hugh B. Scott
United States Magistrate Judge
Robert H. Jackson U.S. Courthouse
2 Niagara Square
Buffalo, NY 14202

      RE:    *Privacy International v. Federal Bureau of Investigation*, No. 18-cv-1488
                Plaintiffs' Status Report and Proposed Scheduling Order

Dear Judge Scott:

      The Civil Liberties and Transparency Clinic ("CLTC") represents Plaintiffs in the above-captioned Freedom of Information Act ("FOIA") matter. We submit this status report and scheduling proposal in accordance with the Court's order of August 1, 2019, in advance of the status conference set for tomorrow, September 11, 2019, at 10:45am. *See* ECF No. 21

      **I.**      **Nature of the Action and Plaintiffs' FOIA Requests**

      Plaintiffs, Privacy International, American Civil Liberties Union, American Civil Liberties Union Foundation, and the Civil Liberties and Transparency Clinic, brought this action against Defendants, eleven federal government agencies, to enforce Plaintiffs' right to government records that were requested pursuant to FOIA, 5 U.S.C. § 552.

      Plaintiffs filed these FOIA requests ("the Requests") exactly one year ago to seek basic information regarding the use of computer "hacking" techniques and technologies by federal law enforcement agencies as part of criminal investigations as well as immigration or other civil enforcement investigations. The Requests aim to shed light on law enforcement agencies' use of various new and powerful computer investigative technologies that allow the government to obtain remote, surreptitious access to information from electronic devices without the knowledge or consent of the device's owner. Such techniques present a unique threat to privacy because they can be used to obtain huge volumes of personal information that would never previously have been available to law enforcement, and because some methods readily sweep up innocent users alongside those actually under suspicion by the government. These methods also present serious computer security concerns because they exploit uncorrected weaknesses and vulnerabilities in electronic devices, thereby leaving the door open for bad actors like scammers and thieves to use them for malicious purposes.

**Jonathan Manes**
Clinical Assistant Professor
Director, Civil Liberties and Transparency Clinic

----------------------

507 O'Brian Hall, Buffalo, NY 14260-1100
716.645.6222  (F) 716.645-2167
jmmanes@buffalo.edu

www.buffalo.edu

Plaintiffs submitted two versions of the FOIA request. The first request, submitted to seven law enforcement agencies (the "Law Enforcement Request") seeks basic information about the acquisition, use, and oversight of these investigative technologies, including the rules, protocols, or legal interpretations that govern their use. This request was submitted on September 10, 2018, to the Federal Bureau of Investigation ("FBI"), Drug Enforcement Agency ("DEA"), Department of Justice Criminal Division ("DOJ-CD"), Immigration and Customs Enforcement ("ICE"), Customs and Border Patrol ("CBP"), Internal Revenue Service ("IRS"), and US Secret Service ("USSS"). In addition, a separate request was sent on the same day to four Offices of Inspector General ("OIG Request") that oversee those seven law enforcement agencies. The OIG Request seeks any audits, investigations, or similar reports concerning the use by government of computer hacking techniques, as well as any records that the OIGs relied upon in the course of preparing such reports. The OIG Request was submitted to the Department of Justice OIG ("DOJ-OIG"), Department of Homeland Security OIG ("DHS-OIG"), Department of the Treasury OIG, and the Treasury Inspector General for Tax Administration ("TIGTA").

Before filing suit on December 21, 2018, Plaintiffs did not receive any records or other substantive response to the Law Enforcement Request from any of the seven agencies to whom it was addressed. In response to the OIG Request, DOJ-OIG produced three reports that were already available online, and TIGTA indicated that it had no responsive records. The other two OIGs did not provide a substantive response. Plaintiffs did receive correspondence from various agencies on ancillary issues such as fee waivers and requests for expedited processing. Plaintiffs filed an Amended Complaint on January 18, 2019, after exhausting administrative remedies with respect to all issues against all agencies.

## II.   FOIA Litigation in General

Plaintiffs seek a scheduling order in this case in order to ensure timely disclosure of records that are responsive to the Requests and which are not exempt from disclosure. Plaintiffs also seekto ensure speedy progress of the case toward summary judgment, at which any remaining disputes will be resolved. Because of the special nature of FOIA litigation, Plaintiffs do not believe that a traditional Rule 16 scheduling order is appropriate, but instead propose an alternative schedule that accounts for the unique features of FOIA litigation.

In a FOIA lawsuit, the first step is typically for each agency to search for records responsive to the plaintiff's requests and to review such records in order to determine which records, if any, the agency will seek to redact or withhold from the plaintiff by invoking one or more enumerated FOIA exemptions. *See* 5 U.S.C. § 552(b). The process of conducting a search sometimes requires (as in this case) the parties to resolve disagreements about the scope of the searches the agencies are obligated to conduct. It also typically requires court-ordered deadlines for each agency to complete its search and subsequent processing of records for disclosure. In this case, Defendants have indicated that they are refusing to conduct searches for two categories of records sought in Plaintiffs' Law Enforcement

Request, as discussed below. In addition, certain Defendant agencies have not yet proposed deadlines even for completing their searches, let alone subsequent review.

Once search, processing, and production are complete with respect to a particular agency, there may be summary judgment practice with respect to that agency to resolve disputes over withholdings, searches, or otherwise. Agencies are required to explain and justify any withheld documents or redactions by providing a detailed description of the withheld or redacted material. This description, known as a *Vaughn* index, must explain with specificity why a FOIA exemption applies to each withheld item. *See Vaughn v. Rosen*, 484 F.2d 820, 826–27 (D.C. Cir. 1973). The *Vaughn* index can be produced to the plaintiff before summary judgment, which is often helpful in order to help the parties narrow the issues in dispute on summary judgment.

At summary judgment, the Court is typically asked to resolve disputes about the lawfulness of the Government's withholdings or redactions, its refusal to search for certain records, the adequacy of the searches that it did conduct, and any other disputed issues. Such litigation typically proceeds on cross-motions for summary judgment. The government bears the burden of proof to justify any withholdings as well as the adequacy of its searches. *See N.Y. Times Co. v. Dep't of Justice*, 756 F.3d 100, 112 (2d Cir. 2014). For that reason, the government often moves for summary judgment first, submitting affidavits and evidence to attempt to carry its burden.

In FOIA cases, there is typically no traditional discovery under Rule 26 prior to summary judgment, although courts do regularly permit FOIA plaintiffs to take depositions or other discovery pursuant to Rule 56(d), particularly where the government's record at summary judgment does not establish that the agency conducted an adequate search. *See, e.g.*, *Weisberg v. United States*, 627 F.2d 365 (D.C. Cir. 1980) (ordering agency officials to submit to depositions where adequacy of search remained in doubt after summary judgment); *Eberg v. U.S. Dep't of Defense*, 193 F. Supp. 3d 95, 118-19 (D. Conn. 2016) (denying summary judgment and allowing discovery regarding the adequacy of the agency's search); *Vietnam Veterans of Am. Conn. Greater Hartford Chapter 120 v. Dep't of Homeland Security*, 8 F. Supp. 3d 188, 201–02 (D. Conn. 2014) (same); *El Badrawi v. Dep't of Homeland Security*, 583 F. Supp. 2d 285, 301 (D. Conn. 2008) (same).

### III.    Status of the Litigation and Discussions Among the Parties

Over the past six months, since Defendants filed their Answer, Plaintiffs have engaged with Defendants in a series of telephone discussions and written correspondence in an effort to reach agreement regarding three primary issues: (1) deadlines by which the defendant agencies will complete their searches and then complete review and production of all responsive non-exempt records, in advance of summary judgment; (2) the scope of the searches that the agencies will conduct; and (3) the precise definition of the computer investigative techniques that come within the FOIA Requests. The key issues at stake are discussed briefly here.

Deadlines: Plaintiffs have consistently sought to obtain agreement from the government on deadlines for the agencies to complete their searches and subsequent review of documents for production. Based on prior experience in FOIA litigation, Plaintiffs believe it is essential to have firm, court-ordered deadlines to ensure that the agencies make reasonable progress toward production of records and potential summary judgment. At the parties' most recent telephone conference, on September 5, 2019, Defendants proposed—for the first time—certain deadlines for some but not all agencies. In Part IV below, Plaintiffs set forth their positions with respect to the government's proposed deadlines. Plaintiffs also offer their own proposed deadlines where they disagree with the government or where the government has not made any proposal. Plaintiffs ask the Court to so-order these proposed deadlines.

Scope of searches: Defendants have informed plaintiff that they will categorically refuse to search for two categories of records sought in the Law Enforcement Request. Specifically, the government refuses to search for records responsive to Item 1(e), which concerns "marketing, promotional, or informational materials" regarding "hacking" technologies, "including materials from external conferences, trade shows, training sessions, workshops, or similar events that employees of the agency attended." The government has also refused to search for Item 5, which encompasses communications with local, state, or foreign law enforcement agencies concerning "computer network exploitation" or "network investigative technique[s]." *See* Am. Complaint, Ex. A, at 9–10. Plaintiffs have attempted repeatedly to negotiate a resolution of these disagreements by, among other things, offering suggestions for specific offices or employees within the agencies that could be the focus of the search for records responsive to these Items, and by attempting to clarify the scope of the request's language. Defendants have thus far not been amenable to such negotiated resolution. Defendants have also indicated that they will categorically exclude individual case files from their searches for responsive records. Plaintiffs have not consented to that limitation.

Plaintiffs' strongest objection is to Defendants' flat refusal to search for any marketing, promotional, or informational materials offered by private-sector vendors, responsive to Item 1(e). Plaintiffs' FOIA request specifically seeks these records and they are central to Plaintiffs' effort to understand both what technologies the government is currently using, and also what technologies are on offer by the private sector for use by these or other law enforcement agencies in the future. One of the co-plaintiffs, Privacy International, has in fact compiled a public database of private-sector surveillance technologies that are available for purchase by law enforcement.[1] The database is an important resource for citizens and advocates concerned about new, intrusive, and legally fraught new forms of surveillance. This portion of the Law Enforcement Request is central to that work.

The government has repeatedly asserted that Plaintiffs' request for marketing, promotional, or informational materials somehow falls outside the proper scope of the Requests and is "overbroad" because it concerns techniques that are not currently in use by

---

[1] *See* Privacy International, *Surveillance Industry Index*, https://sii.transparencytoolkit.org/.

the government. But this is simply false. First, it is the prerogative of the FOIA requestor—*not* the government—to define what records the FOIA requestor seeks. The government cannot rewrite Plaintiffs' FOIA request to suit its preferences. Second, Plaintiffs are in fact very concerned with private-sector hacking technologies that have been shopped to government agencies even if not currently in use by the defendant agencies here. Third, Item 1(e) of the request actually covers technologies that currently *are* in use by government as well as those that are not. Finally, because records responsive to this Item originate from outside of government, they are unlikely to fall within any FOIA exemptions and generally will not be subject to withholding.

The government has offered no plausible legal basis for refusing to conduct a search for the Item 1(e) marketing materials. It initially stated in a March 2019 letter that the documents resulting from the search could cause "confusion" because they might encompass technologies not actually in use by the government. But there is of course no FOIA exemption for documents that might cause confusion. It is not for the government to decide whether the public might be "confused" by disclosure of records, and there is in any case a strong public interest in disclosure of these records, as discussed already. The government now contends that the request is unduly burdensome or overbroad, but each agency could readily conduct a search of the particular offices or employees who have primary responsibility for procuring, vetting, or managing private-sector hacking technologies, running training sessions and workshops, or otherwise interfacing with private-sector surveillance companies. Plaintiffs are prepared to litigate Defendants' outright refusal to search for these records.

With respect to the other records the government has refused to search for—*i.e.* communications with state, local, and foreign agencies responsive to Item 5 of the Law Enforcement Request, as well as a blanket refusal to search individual case files—Plaintiffs have previously offered a number of proposals for how the agencies could design targeted searches that would reasonably identify the records Plaintiffs seek while respecting the agency's practical concerns. Defendants indicate that they have adopted some of these suggestions even while continuing to refuse to search for these categories of records. At this juncture it is unclear whether Defendants' searches will in fact be adequate for Plaintiffs' purposes and consistent with the government's search obligations under FOIA. Plaintiffs will await the completion of Defendants' searches in order to determine whether to litigate Defendants' refusal to search for these records.

Despite these points of disagreement, the parties have successfully reached agreement on a number of issues, including the date range that will be covered by the agencies' searches. Moreover, three defendant agencies (TIGTA, DHS-OIG, and Treasury OIG) have completed searches for records without identifying any responsive documents. Plaintiffs are currently considering Defendants' request that those agencies be voluntarily dismissed from the case. Plaintiffs are also considering a request from the government to narrow the scope of searches for records from DOJ-OIG.

Definition of "Hacking" Technologies at Issue: Prior to the parties' first telephone conference, the government proposed to limit the range of "hacking" techniques at issue in

the FOIA Requests by replacing the definition offered in the Requests themselves with an alternate definition. Plaintiffs responded to the government's proposed redefinition with their own proposal to refine the definition of "hacking," and also included a list of specific, enumerated methods that should be encompassed within the Requests. In response, by letter dated July 12, 2019, the government notified Plaintiffs that it would not accept their definition and instead adopt a different, narrower definition. The government further stated that it would begin conducting searches on that basis, without first securing Plaintiffs' agreement to the revised definition.

Despite the government's unilateral action, and in an effort not to impede progress on the agency's searches, Plaintiffs registered only minor objections to the government's redefinition of the hacking technologies/methods at issue in the Requests. In particular, the Plaintiffs seek to ensure that the government's search encompasses situations where a person may know or suspect that they are subject to hacking/remote intrusions by the government, but where they have not provided affirmative consent. The parties discussed this issue at their most recent meet-and-confer and will continue to seek resolution of this matter to ensure that there is a meeting of the minds with respect to the definition.

### IV. Proposed Scheduling Order

Plaintiffs ask the Court to order interim deadlines in this case as detailed below and also to schedule a **subsequent status conference on or around November 13, 2019**, in order to resolve any outstanding issues and to set a firm schedule for this case through summary judgment.

With respect to **USSS** and **ICE**, the government has proposed that it will complete review of records for potential release by **October 15, 2019**. Plaintiffs consent to this proposal and ask the Court to order that those agencies disclose all non-exempt records or portions thereof by that date.

With respect to **IRS, DEA,** and **DOJ-CD**, the government has proposed that it will complete searches for responsive records by **September 30, 2019**, and that, by **October 15, 2019,** it will propose a schedule for review and production of records by each of those agencies. Plaintiffs agree with these proposals and ask the Court to so-order them. Plaintiffs also ask the Court to order the parties to submit a proposed production schedule with respect to these agencies by **November 8, 2019**, for the Court's consideration in advance of the proposed status conference on or around November 13, 2019.

With respect to **CBP**, the government has now indicated that it has completed its searches and has not identified any responsive records. Plaintiffs are likely to ask CBP to prepare a description of the search that CBP conducted in order for Plaintiffs to determine whether they will contest whether CBP's searches were adequate and reasonably calculated to identify all responsive records, as required by FOIA.

With respect to **FBI**, the government has said that it cannot at this time even provide an estimate for when it will finish searching for records, let alone subsequent

review/processing. The FBI proposes simply to provide a "status update" by November 8, 2019, with no commitment that it will even propose search deadlines by that date. Plaintiffs cannot agree with this open-ended proposal. Plaintiffs believe there must be firm deadlines governing the FBI's search and review.

Plaintiffs thus propose that the Court order the FBI to complete its searches for responsive records by **November 8, 2019**, and that, by the same date, the FBI must propose a production schedule to Plaintiffs with a view to submitting a joint production schedule to the Court for its endorsement. Alternatively, and at the very minimum, the Court should order the FBI to propose, by no later than **November 8, 2019**, firm dates by which it will complete its searches, and then its subsequent review of responsive records for production.

With respect to the **DOJ-OIG**, Defendants have not yet proposed deadlines for search and production. Plaintiffs ask the Court to order the parties to submit a proposed schedule for both search and subsequent production by **November 8, 2019**, in advance of the proposed status conference on or around November 13, 2019.

Finally, with respect to the schedule for **disclosure of *Vaughn* indices** and **filing summary judgment motions**, Plaintiffs would propose deferring discussion of deadlines until the proposed status conference on or around November 13, 2019, at which point it will be clearer when each agency will complete its productions and the size of such productions. Moreover, because it appears that some agencies (particularly the FBI) are likely to complete their searches/production on a much slower timeline than others (such as USSS, ICE, IRS, DEA, and DOJ-CD), it may be most efficient to set a schedule for partial summary judgment with respect to some agencies relatively soon, and then to have a subsequent round of summary judgment briefing with respect to the FBI and any other agencies at the appropriate time later.

*     *     *

For the reasons described above, Plaintiffs respectfully ask the Court to enter an order setting the deadlines described above for each defendant agency. Plaintiffs also ask the Court to schedule a further status conference on or around November 13, 2019, and to require the parties to submit a status report and a further proposed scheduling order in advance thereof.

We thank the Court for its consideration of this case and look forward to discussing these matters with the Court tomorrow.


//


//

                                  Respectfully submitted,

By:   /s/Jonathan Manes
       Jonathan Manes
           *Supervising Attorney*
       Colton Kells
       RJ McDonald
       John Zakour
       Meghan Zickl
           *Student Attorneys*
       Civil Liberties & Transparency Clinic
       University at Buffalo School of Law
       507 O'Brian Hall, North Campus
       University at Buffalo School of Law
       Buffalo, NY 14260
       716-645-6222
       jmmanes@buffalo.edu

cc:    All counsel of record (via ECF)