UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

PRIVACY INTERNATIONAL, AMERICAN CIVIL
LIBERTIES UNION, AMERICAN CIVIL
LIBERTIES UNION FOUNDATION; and
CIVIL LIBERTIES AND TRANSPARENCY CLINIC,

    Plaintiffs,

v.                           18-CV-1488

FEDERAL BUREAU OF INVESTIGATION, et al.

    Defendants.

---

## JOINT STATUS REPORT

  Pursuant to the Scheduling Order of Magistrate Judge Hugh B. Scott dated September 12, 2019 (ECF No. 27), plaintiffs Privacy International, American Civil Liberties Union, American Civil Liberties Union Foundation and Civil Liberties & Transparency Clinic, and defendants Federal Bureau of Investigation ("FBI"), Drug Enforcement Administration ("DEA"), Department of Justice Criminal Division, U.S. Immigration and Customs Enforcement ("ICE"), U.S. Customs and Border Protection ("CBP"), Internal Revenue Service ("IRS"), U.S. Secret Service ("USSS"), Department of Justice Office of Inspector General ("DOJ-OIG"), Department of Homeland Security Office of the Inspector General ("DHS-OIG"), Department of Treasury Office of the Inspector General ("Treasury-OIG") and Treasury Inspector General for Tax Administration ("TIGTA") hereby file this joint status report.

  In this action, plaintiffs seek to compel the production of records under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). This status report describes the current status of

defendants' searches and their review and production of records and the parties' effort to narrow outstanding issues between plaintiffs and defendants.[1]

1. <u>TIGTA, DHS-OIG, Treasury-OIG and CBP</u>:  As explained in defendants' prior Status Report, four defendants – TIGTA, DHS-OIG, Treasury-OIG and CBP− have completed their searches and found no responsive records.  *See* ECF No. 22 ¶¶ 15.g. & 16.  Plaintiffs requested these agencies provide information of the nature of their searches.  Pursuant to that request, TIGTA, DHS-OIG, and Treasury-OIG provided plaintiffs with descriptions of their searches on September 3, 2019.  Based on those description, plaintiffs have agreed to stipulate to the dismissal of these three agencies.  Defendants have provided plaintiffs with a draft stipulation which they are currently reviewing.  CBP is currently preparing a description of its search and expects to provide plaintiffs with the description by December 13, 2019.

2. <u>IRS</u>:  IRS has completed its search and production in accordance with the interpretation and parameters set forth in defendants' July 12, 2019 letter to plaintiffs.  *See* ECF No. 22 ¶¶ 7-8 (discussing defendants' July 12, 2019 letter).  On November 26, 2019, IRS sent plaintiffs' counsel a letter via email explaining that it had located 35 pages of responsive records.  IRS released 14 pages in full and 11 pages in part and withheld 10 pages in full.  IRS withheld information pursuant to one or more of the following exemptions: Exemptions 3, 4, 5, 6, 7A, 7C and 7E.  With its letter, the IRS provided a draft Vaughn index.[2]

---

[1] Defendants' prior Status Report describes the background regarding plaintiffs' FOIA requests and the efforts by the parties to clarify and narrow the scope of plaintiffs' requests.  *See* ECF No. 22.

[2] In Defendants' Status Report, defendants noted that in addition to the general objection raised by defendants regarding the burden of searching individual investigative files, the IRS asserted that it was prohibited by I.R.C. § 6103 from disclosing information contained in individual case files.  In an effort to narrow the issues, the IRS asked plaintiffs whether they

3. <u>ICE</u>: ICE has completed its search and production in accordance with the interpretation and parameters set forth in defendants' July 12, 2019 letter to plaintiffs. On October 9, 2019, ICE sent plaintiff's counsel a letter via email explaining that it had located 76 pages of responsive records. ICE released 38 pages in full and withheld 38 pages in full or in part. ICE withheld pages or portions of pages pursuant to one or more of the following exemptions: Exemptions 5, 6, 7A, 7C and 7E. Plaintiffs have requested ICE to prepare a draft Vaughn, and ICE is considering the request.

4. <u>USSS</u>: USSS has completed its search and production in accordance with the interpretation and parameters set forth in defendants' July 12, 2019 letter to plaintiffs. On October 10, 2019, USSS sent plaintiff's counsel a letter via email explaining that it had located 23 pages of responsive records. USSS released 23 pages with portions withheld pursuant to one or more of the following exemptions: Exemptions 5, 7C and 7E. Plaintiffs have requested USSS to prepare a draft Vaughn, and USSS is considering the request.

5. <u>DEA</u>: DEA made its first interim production on December 2, 2019, by sending plaintiffs' counsel a letter via email. In the letter, DEA explained that for this production, it had reviewed approximately 1,461 pages of potentially responsive documents and found 164 pages responsive. It produced 154 pages in full or in part and withheld 10 pages in full. DEA withheld information pursuant to one or more of the following exemptions: Exemptions 4, 5, 6, 7C, 7E and 7F. DEA is currently reviewing approximately 140 pages of potentially responsive records. In addition, in the course of processing the records for its first production, DEA

---

would be willing to agree that IRS will not have to search individual files. Plaintiffs are considering this matter.

determined that two additional offices may have responsive records and has requested those offices to conduct a search. DEA expects to issue its second response by January 17, 2019.

      6.      <u>Criminal Division</u>:  The Criminal Division has completed its search for potentially responsive records and currently is in the process of reviewing and processing those records. Pursuant to this Court's Scheduling Order, the Criminal Division proposes to process 500 pages of potentially responsive pages per month and produce to plaintiffs any responsive, non-exempt records on a rolling basis, beginning on December 16, 2019. On October 9, 2019, defendants' counsel sent plaintiffs' counsel an email proposing two limitations regarding categories 1 (d) and 5 of plaintiffs' request which would expedite its processing.

    a. First, with respect to with respect to category 1(d) (training materials), the Criminal Division explained that it had located approximately 1,600 pages of potentially responsive records. These records consist primarily of power point presentations, which includes slides not responsive to the request. The Criminal Division asked whether plaintiffs would agree to limit the review and production to only slides relevant to Plaintiffs' request. Plaintiffs replied that they would be willing to scope out the slides in this manner if the government would agree to process all introductory slides. Specifically, plaintiffs asked that this would include "the first slide and any subsequent introductory slides that include information such as the topic of the PowerPoint, the subjects covered, the presenter/author of the slides, the intended audience and the date the PowerPoint was created and presented." This request is predicated on the assumption that the PowerPoints contain all of the categories of information that plaintiffs listed. The Criminal Division agreed that to the extent such slides contain the information listed by plaintiffs, it would agree to process and produce any non-exempt information on such additional slides.

    b. Second, the Criminal Division explained that it had conducted an electronic search for records responsive to category 5 (communications with local, state, and/or federal agencies or foreign entities concerning "computer network exploitation" or "network investigative techniques").[3] However, because of the

---

[3] In defendants' July 12 letter, defendants stated that defendants would not be searching for records responsive to Category 5 because that category of the request was unduly burdensome, unreasonably broad and does not reasonably describe the records sought. As noted in defendants' prior status report, the Criminal Division is in a different situation than other defendant agencies. The Criminal Division has less than 1,000 employees and is comprised of seventeen sections, each of which has a clearly defined mission. Upon review of the request, the

      broad and vague nature of this category of the request, the search pulled tens of thousands of pages of potentially responsive records.  In order to expedite the production, the Criminal Division asked whether Plaintiffs would be willing to limit this category to a one-year time period.  Plaintiffs replied that they would be willing to limit to a three-year time period.  The Criminal Division is willing to accept that time period but it stresses that a three-year time period will significantly add to the time required to complete production. Even with cutting the time period by two years, the Criminal Division has thus far identified more than 20,000 pages of potentially responsive records that still need to be reviewed for responsiveness and duplication, and then to be processed to determine whether they contain non-exempt information that can be provided to plaintiffs. Plaintiffs have indicated that they are open to further discussions about how to focus, narrow, or expedite the agency's review of this set of records with a view toward shortening the time required to complete review.

7. <u>DOJ-OIG</u>: On November 22, 2019, defendants sent plaintiffs a letter via email outlining DOJ-OIG's proposed production schedule.  The letter explained that DOJ-OIG anticipates completing its processing of all responsive, non-exempt material by March 6, 2019.  This date does not include processing of material that require consultation with or direct referral to other components or agencies pursuant to 28 C.F.R. § 16.4.  In addition, this date is predicated on certain caveats regarding category 2 of plaintiffs' request to DOJ-OIG.  As explained in Defendants' Status Report (ECF No. 22), DOJ-OIG identified its report entitled "A Review of the FBI's Impersonation of a Journalist in a Criminal Investigation" (DOJ-OIG Report) as responsive to plaintiffs' request.  Category 2 of the request seeks "any records that the OIG relied upon in the course of preparing reports or other documents responsive to" the first part of the request.  DOJ-OIG proposed to process any records that it relied upon in the DOJ-OIG Report's discussion of FBI's use of a Computer and Internet Protocol Address Verifier

---

Criminal Division determined, based on research and its general knowledge of the functions of and records maintained by each of the sections, that only two sections would have responsive records.  Thus, the Criminal Division, unlike other defendants which have field offices, was able to identify two offices and a limited number of individuals who would be reasonably likely to have responsive records.

("CIPAV"), such as the discussion on portions of pages 11 through 16, but not to process records that DOJ-OIG relied upon to prepare portions of the report focused on matters other than the FBI's use of the CIPAV.  *See* Defendants' Status Report, ECF No. 22 at 9 n. 2.  In a letter dated November 5, 2019, plaintiffs state they would agree to the limitation if, in addition to any records relating to pages 11-16, DOJ-OIG agreed to search for and process certain records that plaintiff identified as having been relied upon and mentioned in the report.  In a letter dated November 22, 2019, DOJ-OIG agreed to plaintiffs' proposal with two caveats.  First, DOJ-OIG stated that it will search for and process the documents enumerated in Plaintiffs' November 5, 2019 letter provided that those documents were actually relied upon in the course of preparing the DOJ-OIG Report and not merely mentioned in the DOJ-OIG Report. Second, DOJ-OIG stated that for any document identified in plaintiffs' November 5, 2019 letter that is both voluminous and of which only discrete portions were relied upon, e.g., the DIOG, DOJ-OIG would only process those portions that were relied upon in the course of preparing the DOJ-OIG Report.  Plaintiffs have registered certain objections to the two caveats proposed by DOJ-OIG, particularly with respect to defendant's suggestion that documents specifically mentioned in the report might not come within the Plaintiff's FOIA request for records "relied upon" in preparing the report. The parties are still discussing this matter to see if they can reach an agreement.

   8.  <u>FBI</u>:  On November 22, 2019, defendants sent plaintiffs a letter via email describing the status of its search and its proposed production schedule.  The letter explained that the FBI has progressed with its search process and has identified potentially responsive records subject to FOIA to process.  However, this search process is ongoing to follow up on any leads in the records identified to date and to confirm that all reasonable steps have been taken to identify potentially responsive records.  The FBI plans to process 500 pages per month (its standard

FOIA processing rate) with the first release of any non-exempt responsive records subject to FOIA to occur on or about March 6, 2020, and with any additional non-exempt responsive records subject to FOIA resulting from the 500 pages per month processing rate to be released subsequently on a monthly basis.  At present, the FBI estimates that processing will require 5 months or more to complete, but this estimate might change as the search process continues.

9. As explained above the parties are still discussing some matters.  The parties propose that they file another status report on January 20, 2020, and quarterly status reports thereafter. As part of the next proposed status report on January 20, 2020, or the quarterly status reports thereafter, one or both parties may propose further orders regarding the management and scheduling of this case.

Respectfully submitted,

/s/Jonathan Manes
Jonathan Manes, *Supervising Attorney*
RJ McDonald, *Student Attorney*†
Colton Kells, *Student Attorney*†
John Zakour, *Student Attorney*†
Meghan Zickl, *Student Attorney*†
Civil Liberties and Transparency Clinic
University at Buffalo School of Law
507 O'Brian Hall, North Campus
Buffalo, NY 14260-1100
Tel: 716-645-6222
Fax: 716-645-6199
jmmanes@buffalo.edu

JAMES P. KENNEDY, JR.
United States Attorney

MICHAEL S. CERRONE
Assistant U.S. Attorney
U.S. Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
716-843-5851
Michael.cerrone@usdoj.gov

JOSEPH H. HUNT
Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

Brett Max Kaufman
American Civil Liberties Union
Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel: 212-549-2500
bkaufman@aclu.org
veidelman@aclu.org

Jennifer Stisa Granick*
American Civil Liberties Union
Foundation
39 Drumm Street
San Francisco, CA 94111
Tel: 415-343-0758
jgranick@aclu.org

Caroline Wilson Palow*
Privacy International
62 Britton Street
London EC1M 5UY
United Kingdom
Tel: +44 (0)203-422-4321

Attorneys for Plaintiffs

*Not yet admitted in this District.
†Admitted as a law student practitioner
pursuant to L. Civ. R. 83.6.

s/Marcia K. Sowles
MARCIA K. SOWLES
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W. Room 11028
Washington, D.C.  20005
202 514-4960
Marcia.sowles@usdoj.gov

Attorneys for Defendants